**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| ANTHONY M. DUNAWAY SR., | : | Case No. 3:26-cv-00017 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| MONTGOMERY COUNTY BOARD | : | |
| OF COMMISSIONERS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**REPORT AND RECOMMENDATION
TO DENY *IN FORMA PAUPERIS* STATUS**

---

Plaintiff Anthony M. Dunaway Sr. has asked to proceed *in forma pauperis* (or

"IFP") in this case and without prepaying the fees to file it.[1] (Doc. Nos. 1, 4.) For the

reasons explained below, the undersigned Magistrate Judge **RECOMMENDS** that the

Court **DENY** Plaintiff's applications and **ORDER** him to pay $405 to proceed with this

case.[2]

---

[1] It appears that Plaintiff has filed six cases in this Court:

1. *Dunaway v. Montgomery County, Ohio, et al.*, No. 3:25-cv-00401-TMR-PBS
2. *Dunaway v. Wallace, et al.*, No. 3:26-cv-00007-WHR-PBS
3. *Dunaway v. Montgomery County Board of Commissioners, et al.*, No. 3:26-cv-00017-WHR-CHG
4. *Dunaway v. Wallace, et al.*, No. 3:26-cv-00033-MJN-PBS
5. *Dunaway v. Schiff, et al.*, No. 3:26-cv-00095-MJN-PBS
6. *Dunaway v. City of Miamisburg, Ohio, et al.*, No. 3:26-cv-116-MJN-CHG

This case is the <u>third</u> of the six cases. Some of the cases may be related. *See* S.D. Ohio Civ. R. 3.1(b).

[2] The total fee amount is $405, which consists of a $350 filing fee and a $55 administrative fee. *See* 28 U.S.C. § 1914; Administrative Office of the U.S. Courts, District Court Miscellaneous Fee Schedule, available at https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (last visited June 30, 2026).

"Anyone who files a lawsuit in federal court presumptively must pay a filing fee." *Crump v. Blue*, 121 F.4th 1108, 1110 (6th Cir. 2024) (citing 28 U.S.C. § 1914(a)). However, a plaintiff "who cannot pay the fee may ask to proceed 'in forma pauperis,' a status that allows the litigant to pay the fee over time or sometimes not at all." *Crump,* 121 F.4th at 1110 (citing § 1915(a)-(b)).

"Proceeding *in forma pauperis* is a privilege and not a right." *Ohio v. Ealy*, No. 1:09-cv-245, 2009 WL 1118704, at *1 (S.D. Ohio Apr. 24, 2009) (citing *Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998)). A litigant need not be absolutely destitute to be granted *in forma pauperis* status. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Instead, an applicant must show that "because of his [or her] poverty," they cannot pay the fee and continue to afford the necessities of life. *Id.* Additionally, "[a] plaintiff seeking *in forma pauperis* standing must respond fully to the questions on the Court's *in forma pauperis* form." *West v. AFSCME Bldg. Corp.*, No. 2:22-cv-2235, 2022 WL 18142399, at *1 (W.D. Tenn. Apr. 14, 2022).

Whether to grant IFP status is within the Court's discretion, and the burden of convincing the Court is on the applicant. *Dotson v. Colvin*, No. 7:16-cv-198, 2016 U.S. Dist. LEXIS 205449, at *2 (E.D. Ky. Nov. 7, 2016). Courts "generally consider an applicant's employment, annual income and expenses, and any other property or assets the individual possesses" when considering an IFP application. *Crochran Through Shields v. Columbus City Sch.*, No. 2:15-cv-632, 2017 WL 11634750, at *1 (S.D. Ohio Nov. 20, 2017). However:

2

> Courts have routinely denied *in forma pauperis* status to litigants who have significant income and assets such as a home and vehicles, even if it would require some financial sacrifice in order for the applicant to pay the filing fee. … *In forma pauperis* status is usually reserved either for indigent prisoners or for persons who subsist on small fixed-income payments such as social security, unemployment compensation, or public assistance and who would truly be required to forego food, shelter, clothing, or some other necessity were they to devote any of their scant resources to paying a judicial filing fee.

*Bush v. Ohio Dep't of Rehab. & Corr.*, No. 2:05-cv-667, 2007 WL 4365381, at *1 (S.D. Ohio Dec. 10, 2007).

Plaintiff has filed two IFP Applications in this case, both signed under penalty of perjury. (Doc. Nos. 1, 4.) The undersigned ordered Plaintiff "to complete <u>fully</u> and <u>accurately</u> an Amended Application to proceed *in forma pauperis*" after reviewing his initial Application. (*See* Order, Doc. No. 3 at PageID 21 [emphasis in original].)

In his initial IFP Application (signed on December 29, 2025 and filed on January 16, 2026) Plaintiff stated that he is employed by Loyal Lawns and that his "take-home pay or wages are: $2,258.00." (Doc. No. 1 at PageID 1.) He indicated that he had $246 in cash or in an account. (*Id*. at PageID 2.) Plaintiff further disclosed that he owned a truck, a trailer, and mowers. (*Id*. at PageID 2.) He stated that he paid a "house" expense in the amount of $1,200 per month; plus monthly bills for electric, internet, and phones; and paid child support in the amount of $305. (*Id*. at PageID 2.)

In his Amended IFP Application (signed on April 8, 2026 and filed on April 14, 2026), Plaintiff disclosed a different financial status. (Doc. No. 4.) He indicated that he was <u>not</u> employed and had not been since September 2025, when "seasonal lawn care" ended. (*Id*. at PageID 24.) Plaintiff stated that he had earned only $800-$900 per month at

3

that time (September 2025) but that his income was "not constant." (*Id*.) He does not provide any information about his income now that the lawn care season has resumed.

Plaintiff further revealed in his Amended IFP Application that he has "no rent obligation" because he resides with his grandmother. (Doc. No. 4 at PageID 25.) He likewise disclosed no monthly bills except child support in the amount of $350 per month. (*Id*.) Plaintiff indicated that he did <u>not</u> own any valuable property (including automobiles) and did not have any cash on hand or in an account. (*Id*.) Finally, Plaintiff disclosed that he received SNAP benefits in the amount of $530 over the previous twelve months. (*Id*. at PageID 24.)

Upon review of these conflicting documents, the undersigned is not convinced that Plaintiff has been entirely forthcoming about his financial status. It appears that Plaintiff <u>owns</u> Loyal Lawns, the "seasonal lawn care" business he mentions. (*See* IFP Application, Doc. No. 1 at PageID 1 in Case No. 3:26-cv-116-MJN-CHG ["I am self employed"].) The Ohio Secretary of State's website lists Plaintiff as the Agent/Registrant for this business.[3] Interestingly, the website also lists a second business connected with Plaintiff at the same address:  Bulls Dun Right LLC, a dog breeding company.[4] Plaintiff also appears to be the registered manager/officer for a third business, Bear Creek Holdings Legacy Group LLC, registered in Nevada, listing the same address Plaintiff provides on

---

[3] *See* Business Details & Filings, Loyal Lawns Landscaping LLC, available at https://businesssearch.ohiosos.gov?=businessDetails/4498759 (last visited June 30, 2026).

[4] *See* Business Details & Filings, Bulls Dun Right LLC, available at https://businesssearch.ohiosos.gov?=businessDetails/4906548 (last visited June 30, 2026).

4

his Amended IFP Application.[5] (Doc. No. 4 at PageID 25.) He has not provided information on the value of, or income received from, these two other businesses. The value of Loyal Lawns is unknown, and the income Plaintiff receives from that business is unclear—Plaintiff's two disclosures are inconsistent in time and amount. (*Compare* Doc. No. 1 at PageID 1-2 [stating, on December 29, 2026, that Plaintiff is employed making $2,358] *with* Doc. No. 4 at PageID 24-25 [stating, on April 8, 2026, that Plaintiff is not employed, has not been since September 2025, and only makes $800-$900 per month).[6]

Plaintiff's changing answers about his expenses and assets are also troubling. His two IFP Applications are completely inconsistent in this regard. (Doc. Nos. 1, 4.) He first states, under penalty of perjury, that he pays a housing expense of $1,200 per month. (Doc. No. 1 at PageID 2.) He later states that he resides with his grandmother and has no rent obligation. (Doc. No. 4 at PageID 252.) Notably, his address is the same in both filings. (*See* Doc. No. 1-1 at PageID 4; Doc. No. 4 at PageID 25.)

Plaintiff also stated that he paid five other monthly bills (Doc. No. 1 at PageID 2) but then stated that he has only one (Doc. No. 4 at PageID 25). That bill (for child support) is presented in the two Applications with different amounts. (*Compare* Doc. No.

---

[5] *See* Entity Information, Bear Creek Holdings Legacy Group LLC, available by name search at https://esos.nv.gov/EntitySearch/OnlineEntitySearch (last visited June 30, 2026).

[6] In a similar application signed and filed in state court the same day as the initial application in this case, Plaintiff stated that his average monthly income (after taxes) was $1,964, and his total monthly expenses were $1,886. *See* "Affidavit of Indigency / Request for Fee Waiver," *Anthony M. Dunaway Sr. v. Chelsea Lewis*, Montgomery County CCP No. 2025 CV 06932 (Dec. 29, 2025), available by name or case number search at https://pro.mcohio.org/ (last visited April 17, 2026).

This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

1 at PageID 2 *with* Doc. No. 4 at PageID 25.) Similarly, at first Plaintiff stated that he had various assets, including an automobile and mowers, but then said he had none. (*Compare* Doc. No. 1 at PageID 2 *with* Doc. No. 4 at PageID 25.) He first said he had a creditor, then said he had none. (*Id.*)

A plaintiff seeking IFP status has "an obligation of truthfulness in his filings in this Court, as well as a burden to demonstrate that he should be granted *in forma pauperis* status." *Wright v. Watson*, No. 2:22-cv-4042, 2023 WL 3509656, at *2 (S.D. Ohio May 17, 2023), *report and recommendation adopted*, 2023 WL 4042170 (S.D. Ohio June 16, 2023). Under the circumstances presented in this case, the undersigned is unconvinced that Plaintiff has been fully forthcoming about his financial status and should be granted IFP status because of his poverty. The undersigned therefore **RECOMMENDS** that the Court **DENY** Plaintiff's IFP Application and **ORDER** him to pay $405 by a date certain if he wishes to proceed in this case.[7]

---

[7] In a separate case, District Judge Rice explained certain problems with suing in federal court to undo decisions in state court. *See Dunaway v. Wallace, et al.*, No. 3:26-cv-00007-WHR-PBS (Doc. No. 5). Those (or similar) issues may also arise here with respect to Plaintiff's claims against Magistrate Thomas Schiff for his decisions in the domestic relations case underlying this case. *See generally Johnson v. Antkoviak*, No. 25-1527, 2026 WL 865786 (6th Cir. Mar. 30, 2026) (discussing the domestic-relations exception to federal jurisdiction); *RLR Invs., LLC v. City of Pigeon Forge, Tennessee*, 4 F.4th 380, 385 (6th Cir. 2021) (discussing the *Rooker-Feldman* doctrine).

The undersigned also observes that injunctive relief is generally unavailable against judicial officers as written into the text of 42 U.S.C. § 1983, and that judicial officers of county common pleas courts are considered arms of the state, not the county. *See Williams v. Parikh*, 708 F. Supp. 3d 1345, 1353 (S.D. Ohio 2023), *aff'd*, No. 24-3059, 2024 WL 5355086, at *2 (6th Cir. Sept. 4, 2024), *cert. denied*, 145 S. Ct. 2713 (2025) ("For § 1983 purposes, the courts of common pleas and their employees are deemed entities under the control of the *state* government, not the county government, because they derive governmental authority directly from the Ohio Constitution.") (emphasis in original); *see also Nawar v. Brown*, No. 2:23-cv-800, 2023 WL 7018822, at *2 (S.D. Ohio Oct. 25, 2023) (discussing why claims against state court judges in their official capacities fail and noting that a county court is "not a municipality" subject to a *Monell* claim).

Plaintiff may file objections to this recommendation as described in the section below. He is **REMINDED** that he must promptly notify the Court if his mailing address changes while this case is pending.

 **IT IS SO RECOMMENDED.**

             *s/ Caroline H. Gentry*
             Caroline H. Gentry
             United States Magistrate Judge

### DEADLINE TO FILE OBJECTIONS

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).