**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| ANTHONY M. DUNAWAY SR.,<br><br>Plaintiff,<br><br>vs.<br><br>MONTGOMERY COUNTY BOARD OF COMMISSIONERS, *et al.*,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:26-cv-00017<br><br>District Judge Thomas M. Rose<br>Magistrate Judge Caroline H. Gentry |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff Anthony M. Dunaway Sr. asked to proceed *in forma pauperis* (or "IFP") in this case and without prepaying the fees to file it.[1] (Doc. Nos. 1, 4.) On July 13, 2026, the undersigned Magistrate Judge recommended to District Judge Walter H. Rice that Plaintiff Dunaway's Applications be denied. (Report and Recommendation, Doc. No. 5.)

Plaintiff objected to that recommendation, arguing (among other things) that the undersigned had not considered "substantial changes" to his financial situation "that occurred after the financial information relied upon by the Magistrate Judge." (*See*

[1] It appears that Plaintiff has filed six cases in this Court:

1. *Dunaway v. Montgomery County, Ohio, et al.*, No. 3:25-cv-00401-TMR-PBS
2. *Dunaway v. Wallace, et al.*, No. 3:26-cv-00007-MJN-PBS
3. *Dunaway v. Montgomery County Board of Commissioners, et al.*, No. 3:26-cv-00017-TMR-CHG
4. *Dunaway v. Wallace, et al.*, No. 3:26-cv-00033-MJN-PBS
5. *Dunaway v. Schiff, et al.*, No. 3:26-cv-00095-MJN-PBS
6. *Dunaway v. City of Miamisburg, Ohio, et al.*, No. 3:26-cv-116-MJN-CHG

This case is the third of the six cases. Some of the cases may be related. *See* S.D. Ohio Civ. R. 3.1(b).

Redacted Objections, Doc. No. 9 at PageID 58.) Although District Judge Rice had "no quarrel with" the undersigned's Report, he "returned [the matter] to the Magistrate Judge to conduct whatever procedure(s) might be needed for her to consider all presently applicable material information that she deems necessary to determine the Plaintiff's financial status." (Doc. No. 11.) The case has since been transferred to the docket of District Judge Thomas M. Rose (Doc. No. 12), but this direction stands.

For the reasons explained below, the undersigned Magistrate Judge again **RECOMMENDS** that the Court **DENY** Plaintiff's IFP Applications and **ORDER** him to pay $405 if he wants to proceed with this case.[2]

## I. Previous Conclusions

The undersigned incorporates the legal standards outlined in the previous Report and Recommendation, which are well settled and to which there has been no objection. (Doc. No. 5.) Of particular relevance, the undersigned again notes that proceeding *in forma pauperis* in federal court is a privilege and not a right, and that an applicant has the burden to demonstrate that their application should be granted. (*Id*. at PageID 27.)

Concerning Plaintiff's two IFP Applications, the undersigned previously found that Plaintiff's responses were materially inconsistent and that he omitted or downplayed certain information about his financial circumstances:

> In his initial IFP Application (signed on December 29, 2025 and filed on January 16, 2026) Plaintiff stated that he is employed by Loyal Lawns and

[2] The total fee amount is $405, which consists of a $350 filing fee and a $55 administrative fee. *See* 28 U.S.C. § 1914; Administrative Office of the U.S. Courts, District Court Miscellaneous Fee Schedule, available at https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule (last visited Sep. 16, 2026).

that his "take-home pay or wages are: $2,258.00." (Doc. No. 1 at PageID 1.) He indicated that he had $246 in cash or in an account. (*Id*. at PageID 2.) Plaintiff further disclosed that he owned a truck, a trailer, and mowers. (*Id*. at PageID 2.) He stated that he paid a "house" expense in the amount of $1,200 per month; plus monthly bills for electric, internet, and phones; and paid child support in the amount of $305. (*Id*. at PageID 2.)

In his Amended IFP Application (signed on April 8, 2026 and filed on April 14, 2026), Plaintiff disclosed a different financial status. (Doc. No. 4.) He indicated that he was not employed and had not been since September 2025, when "seasonal lawn care" ended. (*Id*. at PageID 24.) Plaintiff stated that he had earned only $800-$900 per month at that time (September 2025) but that his income was "not constant." (*Id*.) He does not provide any information about his income now that the lawn care season has resumed.

Plaintiff further revealed in his Amended IFP Application that he has "no rent obligation" because he resides with his grandmother. (Doc. No. 4 at PageID 25.) He likewise disclosed no monthly bills except child support in the amount of $350 per month. (*Id*.) Plaintiff indicated that he did not own any valuable property (including automobiles) and did not have any cash on hand or in an account. (*Id*.) Finally, Plaintiff disclosed that he received SNAP benefits in the amount of $530 over the previous twelve months. (*Id*. at PageID 24.)

Upon review of these conflicting documents, the undersigned is not convinced that Plaintiff has been entirely forthcoming about his financial status. It appears that Plaintiff <u>owns</u> Loyal Lawns, the "seasonal lawn care" business he mentions. (*See* IFP Application, Doc. No. 1 at PageID 1 in Case No. 3:26-cv-116-MJN-CHG ["I am self employed"].) The Ohio Secretary of State's website lists Plaintiff as the Agent/Registrant for this business.[3] Interestingly, the website also lists a second business connected with Plaintiff at the same address: Bulls Dun Right LLC, a dog breeding company.[4] Plaintiff also appears to be the registered manager/officer for a third business, Bear Creek Holdings Legacy Group LLC, registered in Nevada, listing the same address Plaintiff provides on his Amended IFP

---

[3] *See* Business Details & Filings, Loyal Lawns Landscaping LLC, available at https://businesssearch.ohiosos.gov?=businessDetails/4498759 (last visited June 30, 2026).

[4] *See* Business Details & Filings, Bulls Dun Right LLC, available at https://businesssearch.ohiosos.gov?=businessDetails/4906548 (last visited June 30, 2026).

> Application.[5] (Doc. No. 4 at PageID 25.) He has not provided information on the value of, or income received from, these two other businesses. The value of Loyal Lawns is unknown, and the income Plaintiff receives from that business is unclear—Plaintiff's two disclosures are inconsistent in time and amount. (*Compare* Doc. No. 1 at PageID 1-2 [stating, on December 29, 2025, that Plaintiff is employed making $2,358] *with* Doc. No. 4 at PageID 24-25 [stating, on April 8, 2026, that Plaintiff is not employed, has not been since September 2025, and only makes $800-$900 per month).[6]
>
> Plaintiff's changing answers about his expenses and assets are also troubling. His two IFP Applications are completely inconsistent in this regard. (Doc. Nos. 1, 4.) He first states, under penalty of perjury, that he pays a housing expense of $1,200 per month. (Doc. No. 1 at PageID 2.) He later states that he resides with his grandmother and has no rent obligation. (Doc. No. 4 at PageID 252.) Notably, his address is the same in both filings. (*See* Doc. No. 1-1 at PageID 4; Doc. No. 4 at PageID 25.)
>
> Plaintiff also stated that he paid five other monthly bills (Doc. No. 1 at PageID 2) but then stated that he has only one (Doc. No. 4 at PageID 25). That bill (for child support) is presented in the two Applications with different amounts. (*Compare* Doc. No. 1 at PageID 2 *with* Doc. No. 4 at PageID 25.) Similarly, at first Plaintiff stated that he had various assets, including an automobile and mowers, but then said he had none. (*Compare* Doc. No. 1 at PageID 2 *with* Doc. No. 4 at PageID 25.) He first said he had a creditor, then said he had none. (*Id*.)

(Doc. No. 5 at PageID 28-31.)

Under the circumstances, "the undersigned [was] unconvinced that Plaintiff [had] been fully forthcoming about his financial status and should be granted IFP status because of his poverty." (Doc. No. 5 at PageID 31.) Although the undersigned did not

---

[5] *See* Entity Information, Bear Creek Holdings Legacy Group LLC, available by name search at https://esos.nv.gov/EntitySearch/OnlineEntitySearch (last visited June 30, 2026).

[6] "In a similar application signed and filed in state court the same day as the initial application in this case, Plaintiff stated that his average monthly income (after taxes) was $1,964, and his total monthly expenses were $1,886. See 'Affidavit of Indigency / Request for Fee Waiver,' *Anthony M. Dunaway Sr. v. Chelsea Lewis*, Montgomery County CCP No. 2025 CV 06932 (Dec. 29, 2025), available by name or case number search at https://pro.mcohio.org/ (last visited April 17, 2026)."

recommend that the case be dismissed under 28 U.S.C. § 1915(e)(2)(A) based on a finding that Plaintiff's "allegation of poverty is untrue," the undersigned did recommend that Plaintiff's Applications be denied. (Doc. No. 5.)

## II. Supplemental Conclusions

### A. Additional Information

In Plaintiff's Redacted Objections ("Objections"),[7] he asserted that "his current financial circumstances cannot be accurately evaluated using earlier financial information without considering … subsequent events." (Doc. No. 9 at PageID 59.) He explained that since November 2024, he has "[become] the primary caregiver" for his children, with all that entails. (*Id*. at PageID 58, 60-61.) He has also undertaken greater family responsibilities, such as caring for his elderly grandmother while she recovered from injuries and cultivating a family garden. (*Id*.) Because of these increased responsibilities, Plaintiff says, he "experienced a corresponding reduction in his ability to maintain consistent employment." (Doc. No. 9 at PageID 58; *see also* PageID 61 [these responsibilities "substantially limited his ability to engage in consistent outside employment while fulfilling his obligations to his family"].)

The undersigned has carefully reviewed the additional materials Plaintiff submitted. (Doc. No. 9.) The materials include Plaintiff's (unsworn) Objections; his grandmother Judy's Declaration; the third page of a Montgomery County Juvenile Court Order apparently entered in July 2025; two utility bills—one in Judy's name for

[7] Plaintiff's initial Objections were sealed because he included the full names of his minor children in them. (*See* Doc. No. 6, 7. *See also* Doc. No. 1, 3 [instructing Plaintiff to use his minors' initials].)

$2,105.25 and one in Plaintiff's name for $436.20; and a Facebook post from one of Plaintiff's three businesses mentioned above. (*See* Exhibit List, Doc. No. 9-1 at PageID 63.)

In her Declaration, Plaintiff's grandmother Judy recounts family events in 2024 and 2025 and states that she is "very proud of the man and father" he has become. She expresses that he always puts his children first and discusses a parenting time schedule. (Doc. No. 9-1 at PageID 65-66.) Relevant to the question currently before the Court, Judy states that Plaintiff used to contribute about $1,200 per month toward the household, which went toward "groceries, utilities, propane, and other household expenses," but he "was no longer able to contribute toward the household expenses as he had previously" because of the events in 2024 and 2025. (*Id*. at ¶¶ 3, 11.)

The other documents provide the following additional information. The excerpt from the 2025 Juvenile Court order reflects that Plaintiff's motion for legal custody was granted with respect to one child and denied with respect to another. (Doc. No. 9-2 at PageID 68.) His child support obligation (with respect to the first child) was terminated, and he was ordered to pay any arrearage in the amount of $250 per month. (*Id*.)

Both of the provided utility bills appear to be connected to Judy's address where Plaintiff also lives with his children. (Doc. No. 9-3, 9-4.) Judy's bill reflects an overdue balance. (Doc. No. 9-3 at PageID 70.) The other bill is less clear but does show a balance due. (Doc. No. 9-4 at PageID 72.)

The printed Facebook post appears to be dated July 9, 2026. (Doc. No. 9-5.) Written by Plaintiff on behalf of his account Bulls Dun Right LLC, it reflects that

Plaintiff has "stepped away from [dog] breeding" during "the last couple of years" and is looking to rehome his remaining dogs. (*Id*. at PageID 74-77.)

In Plaintiff's Objections, he addresses this business and one other. First, he states that:

> Bulls Dun Right LLC has generated no meaningful income relevant to Plaintiff's present financial condition, maintains no active business bank account, has provided Plaintiff with no disposable income, and does not establish that Plaintiff possesses liquid assets from which he could pay the filing fee.

(Doc. No. 9 at PageID 61.) Similarly, Plaintiff states that:

> Bear Creek Holdings Legacy Group LLC has generated no meaningful income, maintains no active business bank account, has provided Plaintiff with no disposable funds, and does not establish that Plaintiff possesses liquid assets from which he could pay the filing fee.

(*Id*.) Plaintiff emphasizes that "the existence of these entities does not establish" and "should not be construed as evidence that Plaintiff possesses liquid assets or the present financial ability to pay the filing fee." (*Id*.)

Notably, however, Plaintiff provides no information about his third business, Loyal Lawns Landscaping LLC, or its value, profits, or assets. He provides no updated information about what he receives from it. (*Compare* Doc. No. 1 at PageID 1-2 [stating, on December 29, 2026, that Plaintiff is employed making $2,358] *with* Doc. No. 4 at PageID 24-25 [stating, on April 8, 2026, that Plaintiff is not employed, has not been since September 2025, and only makes $800-$900 per month].) He does not account for his assets that appear to be associated with it. (*See* Doc. No. 1 at PageID 2 [listing "Chevy truck 4500.00 trailer 1200.00 mowers 2200.00"].) In fact, Plaintiff omits this business

and these assets entirely from his Objections. (Doc. No. 9.) He instead asserts that his "current financial condition is demonstrated by his present household obligations, lack of disposable income, receipt of SNAP benefits, outstanding utility expenses, and the supporting declarations and exhibits submitted with these objections." (*Id*. at PageID 61.)

In sum, Plaintiff asserts that his increased family responsibilities have prevented him from working, that two of his businesses have not provided him with "meaningful" income, and that he lacks liquid assets or disposable income. (Doc. No. 9.)

**B. <u>Conclusions</u>**

As a preliminary matter, the undersigned notes that nearly all the "significant changes" Plaintiff points to in his Objections occurred in 2024 and 2025. (Doc. No. 9.) This case was filed in 2026. (Doc. No. 1.) When Plaintiff filed his IFP Applications in January and April 2026, these "changes" should already have been reflected in the Applications, which were signed under penalty of perjury. (Doc. No. 1, 4.)

Further, much of the additional information provided in Plaintiff's Objections concerns his parenting duties and qualities as a father and son, which are issues that may be relevant to his state custody cases but are not directly relevant here. The undersigned accepts Plaintiff's assertion that he now has more responsibility for financially supporting his children, "including housing, food, clothing, transportation, school-related needs, and all other ordinary expenses associated with raising a child." (Doc. No. 9 at PageID 60.) This point, however, raises more questions than it answers.

Plaintiff's grandmother states that Plaintiff does not contribute to the household in the manner he previously did. (Doc. No. 9-1 at PageID 65-66, ¶¶ 3, 11.) Plaintiff himself

appears to suggest that he has entirely stopped working because of his family responsibilities. (Doc. No. 9 at PageID 61 ["Plaintiff did not stop working because he lacked a desire to work. Rather, his responsibilities shifted from earning income to providing daily care and support for his family."].) And Plaintiff previously disclaimed having any cash on hand or in accounts. (Doc. No. 4 at PageID 25.) Yet, Plaintiff emphasizes in his Objection that he has been financially responsible for himself and his four children for some period of time.

Without any employment, other income, savings, or funds coming in from two businesses, it is unclear how Plaintiff affords the ordinary expenses of life for himself and his children. If these expenses are paid by others (such as by a family member), then those resources must be considered by this Court in determining whether to grant IFP status. *See Rytlewski v. Bay*, No. 19-11243, 2019 U.S. Dist. LEXIS 116322, at *2-3 (E.D. Mich. June 12, 2019) ("[f]ederal courts … have consistently considered not only an IFP applicant's personal income, but also his or her other financial resources, including the resources that could be made available from the applicant's spouse, or other family members.") (citations omitted). Put another way, if Plaintiff's grandmother financially supports Plaintiff and pays the costs for him and his children, then her resources must be considered in addition to Plaintiff's individual finances. *See Cognetto v. Comm'r of Soc. Sec.*, No. 14-cv-10006, 2014 U.S. Dist. LEXIS 12309, at *4 (E.D. Mich. Jan. 10, 2014) (quoting *Fridman v. City of New York*, 195 F. Supp. 2d 534, 537 (S.D.N. Y. 2002) ("courts consider the resources that the applicant has or 'can get' from those who ordinarily provide the applicant with the necessities of life, such as from a spouse, parent,

adult sibling, or other next friend.") (cleaned up). Plaintiff has not disclosed any such support and Judy's Declaration provides no information on this subject.

Plaintiff may receive funds from his third business, Loyal Lawns, as mentioned in his Applications but conspicuously absent from his Objections. (*See* Doc. No. 1 at PageID 1; Doc. No. 4 at PageID 24.) Plaintiff may have used the assets associated with that business (truck, trailer, mowers) to help support himself in other ways. Or, Plaintiff's grandmother may financially support Plaintiff and his four children and pay for their housing and child-raising expenses. What is clear is that some relevant information about how Plaintiff affords the family expenses discussed in his Objections is missing from Plaintiff's submissions.

Plaintiff's assertion that he lacks "disposable income," "meaningful income relevant to [his] present financial condition," or "liquid assets" misses the point. (Doc. No. 9 at PageID 61.) A party seeking IFP status must truthfully disclose all income, not just what he has deemed disposable, relevant, or meaningful. *See Grant v. Seabron*, No. 3:25-cv-391, 2026 U.S. Dist. LEXIS 10017, at *3 (S.D. Ohio Jan. 20, 2026) (quoting *West v. AFSCME Bldg. Corp.*, No. 2:22-cv-2235, 2022 U.S. Dist. LEXIS 235080 (W.D. Tenn. Apr. 14, 2022)) ("[A] plaintiff seeking *in forma pauperis* standing must respond fully to the questions on the Court's *in forma pauperis* form.").

Further, the Court considers all assets, not just those that are "liquid" or immediately available. *See Branham v. O'Malley*, No. 7:24-cv-2, 2024 WL 4907212, at *1 (E.D. Ky. Jan. 12, 2024) ("The plain meaning of 'all assets,' in addition to holdings from several district courts, supports the proposition that the assets to be disclosed, and

therefore considered in determining whether to grant IFP, are wide-ranging" and include real and personal property); *Grant*, 2026 U.S. Dist. LEXIS 10017, at *5 (citing *Dotson v. Colvin*, No. 7:16-cv-198, 2016 U.S. Dist. LEXIS 205449, at *4 (E.D. Ky. Nov. 7, 2016) (discussing "real and personal property that could be liquidated" as part of the IFP analysis).

Having considered Plaintiff's Objections in addition to his two IFP Applications, the undersigned remains unconvinced that Plaintiff has fully disclosed his financial situation to the Court. Despite his statements that he has no "disposable" or "meaningful" income or "liquid" assets, Plaintiff still has not provided a coherent picture of his finances and described how he supports himself and his children. It appears that Plaintiff has presented selected information to the Court while omitting other relevant information. Although such a cherry-picked disclosure could support a finding that the Plaintiff's "allegation of poverty is untrue" under 28 U.S.C. § 1915(e)(2)(A),[8] the undersigned

---

[8] As another judicial officer of this Court explained:

> Plaintiff's IFP Motions seek the benefit of 28 U.S.C. § 1915(a), which permits an indigent plaintiff to avoid filing fees if he demonstrates by affidavit the inability to pay such fees. In enacting the original *in forma pauperis statute*, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). Courts are therefore directed to dismiss a case filed *in forma pauperis*, or any part of it, that is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).
>
> Another protection written into the [IFP] statute is the requirement that a court dismiss an action if it determines that a plaintiff's "allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A). "The purpose of this provision is to weed out the litigants who falsely understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth." *Jones v. Michigan Dep't of Hum. Servs.*, No. 12-14466, 2013 WL 640771, at *1 (E.D. Mich. Feb. 21, 2013) (quoting

instead **RECOMMENDS** that Plaintiff's IFP Applications be **DENIED**, and that he be **ORDERED** to pay the fees in full by a date certain if he wants to proceed with this case.

Plaintiff may file objections to this recommendation as described in the section below. Alternatively, he may pay $405 to the Clerk of Court.

Plaintiff is **REMINDED** that he must promptly notify the Court if his mailing address changes while this case is pending.

**IT IS SO RECOMMENDED.**

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

## DEADLINE TO FILE OBJECTIONS

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond

> *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997)) (cleaned up). A plaintiff who understates the amount of his income or other money received risks having the case dismissed with prejudice, even if he could not, in truth, afford the filing fee. *See Ojose v. Youngstown State Univ.*, No. 19-3221, 2019 WL 8301664, at *2 (6th Cir. Dec. 18, 2019) (where the allegation of poverty is untrue, dismissal is required, but "the district court has discretion to determine whether the action is dismissed with or without prejudice."); *Johnson v. Working Am.*, No. 1:12-cv-1505, 2013 WL 3822232, at *4 (N.D. Ohio July 23, 2013) (citing *Vann v. Comm'r of N.Y. City Dep't of Correction*, 496 F. App'x 113, 116 (2d Cir. 2012)) (dismissing with prejudice where plaintiff misrepresented his financial status, saying: "While Plaintiff may not have had sufficient funds to pay the filing fee, this does not excuse the fact that he was untruthful in his Application; i.e. that he falsely stated he was not receiving 'pay or wages' at the time he filed his Application.").

*Givens v. Shadyside Police Dep't*, No. 2:22-cv-4268, 2023 WL 3089066, at *5 (S.D. Ohio Apr. 26, 2023), *report and recommendation adopted*, 2023 WL 3868394 (S.D. Ohio June 7, 2023) (emphasis added).

to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).